**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

FLEXCO MICROWAVE, INC.,

       Plaintiff,

       v.

MEGAPHASE LLC,

       Defendant.

Civil Action No. 14-6947 (MAS) (LHG)

**OPINION**

**SHIPP, District Judge**

This matter comes before the Court on Plaintiff Flexco Microwave, Inc.'s ("Flexco" or "Plaintiff") motion to dismiss Defendant MegaPhase LLC's ("MegaPhase" or "Defendant") counterclaim for failure to state a claim and to strike several of Defendant's affirmative defenses, pursuant to Federal Rule of Civil Procedure 12(b)(6) and (f). (ECF No. 8.) Defendant has opposed the motions (ECF No. 9), and Plaintiff has replied (ECF No. 13). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Plaintiff's motion to dismiss Defendant's counterclaim is granted and Plaintiff's motion to strike is granted in part and denied in part.

### I.    Background

Plaintiff brings suit alleging that Defendant breached the terms of the parties' settlement of a prior lawsuit, *Flexco Microwave, Inc. v. MegaPhase LLC*, No. 04-1339 (D.N.J. Mar. 6, 2009) ("*Flexco I*"). In 2004, Flexco, a New Jersey corporation engaged in the design, manufacture, and sale of coaxial cables, filed *Flexco I* against MegaPhase, a Pennsylvania limited liability company also engaged in the manufacturing of coaxial cables. (Compl. ¶¶ 2-3, 6, ECF No. 1-2.) Flexco's

president William Pote, Jr. ("Pote II"), is the father of MegaPhase's Chief Executive Officer and founder, William Pote, III ("Pote III"). (*Id.* ¶¶ 5-7.) Pote III, along with the other founders of MegaPhase, are former employees of Flexco. (*Id.* ¶ 6.)

In *Flexco I*, Flexco brought claims of, inter alia, patent infringement in connection with Flexco's allegation that MegaPhase willfully and deliberately infringed U.S. Patent No. 5,181,316 ("'316 Patent")[1] and misappropriated Flexco's trade secrets and confidential business information. The parties reached a settlement of *Flexco I* ("Settlement") on June 12, 2008. (Compl. ¶ 9.) Shortly thereafter, on August 18, 2008, Flexco moved to enforce the Settlement or, alternatively, to extend the time to re-open the action. (*Id.* ¶ 12.) MegaPhase filed opposition papers acknowledging that a settlement had been reached but raised an objection to certain language in the Settlement. (*Id.*) By Memorandum Opinion and Order on March 5, 2009, the Honorable Tonianne J. Bongiovanni, U.S.M.J., granted Flexco's motion to enforce the Settlement and resolved a dispute between the parties as to a term in the Settlement. (*Id.* ¶ 13.)

The terms of the Settlement most pertinent to the action at hand are:

1. The Defendant, MegaPhase, LLC, will pay to the Plaintiff the sum of $125,000 as follows:
   a) $25,000 upon the execution of this stipulation;
   b) $25,000 on or before April 11, 2009;
   c) $25,000 on or before April 11, 2010;
   d) $25,000 on or before April 11, 2011;
   e) $25,000 on or before April 11, 2012.

2. The Defendants hereby acknowledge that the Plaintiff is the owner and/or holder of the ['316 Patent] . . . .
   * * *

6. In consideration thereof, MegaPhase shall pay to the Plaintiff payments on net sales[2] of convoluted flexible coaxial cable and

---

[1] The '316 Patent describes a particular method for making flexible coaxial cables. (Compl. ¶ 19.)

[2] "Net sales is . . . defined as all sales less credits for returns." (Compl., Ex. A, Settlement ¶ 6.)

2

cable assemblies during the 7-year period described above as follows:

a) 3% of the first $1,000,000 of net sales;
b) 2% of net sales in excess of $1,000,000 up to and including $2,000,000;
c) 1% of net sales in excess of $2,000,000.[3]

\* \* \*

7. Identification of Equipment and Documentation

    7.1    All equipment currently used by [MegaPhase], including but not limited to, machines, dies, locking dies, fixtures, form rolls, etc., related to the fabrication or manufacture of Licensed Products will be identified, numbered with metallic tag or stamp by persons selected by Flexco and will upon the Effective Date of this Stipulation constitute property of [Flexco]. [Flexco] shall permit [MegaPhase] to continue to use the equipment to manufacture Licensed Products. [MegaPhase] will be responsible for maintaining the equipment in excellent operating condition.

    7.2    [MegaPhase] will notify [Flexco] of any additions, deletions or changes to [MegaPhase's] equipment inventory. All equipment relating to the fabrication or manufacture of Licensed Products acquired by [MegaPhase] during the Term of this Stipulation shall also become the property of [Flexco]. Any discontinued equipment shall be delivered to [Flexco].

    7.3    All engineering prints and documentation in [MegaPhase's] possession on the Effective Date of this Stipulation relating to the Licensed Products and all engineering prints and documents acquired or created during the Term of this Stipulation are and shall be the proprietary property of [Flexco], and shall be maintained by MegaPhase at its place of business.

(Settlement ¶ 1-2, 6-7.) After *Flexco I* was settled and Judge Bongiovanni resolved the remaining issue, MegaPhase paid the first three installments required in Section 1 of the Settlement. (Compl.

---

[3] "Payments under Section 6 shall be paid on a monthly basis with the payment for the preceding month due and payable on or before the tenth day of each month." (Settlement ¶ 6.1.) "Any late payments of payments due under Section 6 shall incur a late payment charge in the amount of 4% of the payment amount." (*Id.* ¶ 6.3.)

¶¶ 16-17.) However, Flexco alleges it has yet to receive the fourth and fifth installments required under Section 1, in addition to the portion of MegaPhase's net sales as agreed to in Section 6. (*Id.* ¶¶ 26, 30.) Plaintiff further alleges that MegaPhase breached the Settlement by failing to identify and record Flexco's equipment and documents that are in its possession in accordance with Section 7. (*Id.* ¶ 35.) Due to MegaPhase's alleged failure to comply with the terms of the Settlement, Plaintiff brings suit for breach of contract, specifically breach of Sections 1, 6, and 7. (*Id.* ¶¶ 25-36.) Plaintiff seeks as damages the amounts required under the Settlement, as well as specific performance of the obligations contained in Section 7. (*Id.* ¶ 36.)

MegaPhase, in response, asserts a counterclaim and several affirmative defenses. Defendant's counterclaim seeks "judgment against the Plaintiff for the sum of $224,769 . . . under a joint mistake of fact, or a unilateral mistake together with the deceitful and fraudulent conduct of Plaintiff." (Def.'s Answer & Countercl. ¶ 66, ECF No. 6.) Additionally, Defendant asserts sixteen affirmative defenses, eleven of which are the subject of the motion to strike:

- First Affirmative Defense: "The Complaint, as a whole, and as to individual counts, fails to state a cause of action for which relief can be granted." (*Id.* ¶ 18.)

- Second Affirmative Defense: "The Plaintiff's claims are barred by the doctrine of waiver." (*Id.* ¶ 19.)

- Third Affirmative Defense: "The Plaintiff's claims are barred by the doctrine of estoppel." (*Id.* ¶ 20.)

- Fourth Affirmative Defense: "The Plaintiff's claims are barred by its unclean hands." (*Id.* ¶ 21.)

- Fifth Affirmative Defense: "Any damages alleged to have been sustained by Plaintiff are due to the acts, conduct and omissions on the part of the Plaintiff." (*Id.* ¶ 22.)

- Sixth Affirmative Defense: "The Plaintiff's claims are barred by the operation of the doctrine of laches." (*Id.* ¶ 23.)

4

- Seventh Affirmative Defense: "The Plaintiff's claims for damages are barred due to the Plaintiff's failure to sustain or suffer any damages." (*Id.* ¶ 24.)

- Ninth Affirmative Defense: "The Plaintiff's claims for damages are barred due to the Plaintiff's failure to mitigate its damages." (*Id.* ¶ 26.)

- Eleventh Affirmative Defense: "The business of MegaPhase and its sales of cables does not involve any manufacturing process by MegaPhase. Thus, there could not be any infringement of a manufacturing process by the Defendant . . . ." (*Id.* ¶ 45.)

- Fifteenth Affirmative Defense: "The patent alleged to be owned by Plaintiff . . . is void, inasmuch as process [sic] claimed to have been patented was already in the public domain, in common use by the public for many years prior to the issuance of the said patent, and the patent did not cover any improvement or novelty over and above those in common use prior to the date of the registration of the same." (*Id.* ¶ 59.)

- Sixteenth Affirmative Defense: The Settlement was entered into based on "a joint mistake of fact, or a unilateral mistake together with the deceitful and fraudulent conduct of the Plaintiff." (*Id.* ¶ 66.)[4]

Flexco now moves to dismiss the counterclaim and to strike the above affirmative defenses.

## II.    Subject Matter Jurisdiction

"A federal court does not have jurisdiction over a settlement agreement just because that agreement settled a federal cause of action." *Nelson v. Pennsylvania*, 125 F. App'x 380, 382 (3d Cir. 2005). The dismissal of the first action generally terminates federal jurisdiction. *Id.* However, "a district court may have ancillary jurisdiction to enforce a settlement agreement if the court retains jurisdiction by a separate provision or by incorporating the terms of the settlement agreement into an order." *Id.* at 381-82. A federal court can retain jurisdiction "if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order

---

[4] Defendant's responsive pleading asserts the doctrine of mistake as both an affirmative defense and a counterclaim. (*See id.* ¶¶ 63-66.)

of dismissal—either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." *In re Phar-Mor, Inc. Sec. Litig.*, 172 F.3d 270, 274 (3d Cir. 1999) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994)). In either case, "a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist." *Id.* The 2008 Consent Order dismissing the complaint with prejudice and without costs in *Flexco I*, states that "the Court shall retain jurisdiction to enforce the settlement." (Compl., Ex. A, Order of Dismissal 2, ECF No. 1-2.)  Since the Consent Order contains a provision stating the District of New Jersey shall retain jurisdiction over the settlement, the Court possesses jurisdiction to adjudicate this matter.

## III.   Analysis

### A.   Motion to Dismiss Counterclaim

#### 1.   Legal Standard

A district court conducts a three-part analysis when considering a Rule 12(b)(6) motion. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court, however, must disregard any conclusory allegations proffered in the complaint. *Id.* For example, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must

next "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). On a motion to dismiss for failure to state a claim, a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). Additionally, "the standards for a properly pled complaint, by extension[,] apply to counterclaims." *United States v. Boston Scientific Neuromodulation Corp.*, No. 11-1210, 2014 WL 4402118, at *2 (D.N.J. Sept. 4, 2014).

## 2.    Discussion

Plaintiff moves to dismiss Defendant's counterclaim, which seeks relief from the Settlement and damages in the amount of $224,769 for a "joint mistake of fact, or a unilateral mistake together with the deceitful and fraudulent conduct of the Plaintiff." (Def.'s Answer & Countercl. ¶ 66.) Defendant's description of its counterclaim simultaneously invokes the doctrine of mutual mistake, which is an affirmative defense, and the remedy of rescission. *See Bonnco Petrol, Inc. v. Epstein*, 115 N.J. 599, 608, 611 (1989); *see also United States v. Failla*, 219 F.2d 212, 213 (3d Cir. 1955). Neither, however, standing alone, supports an affirmative counterclaim. Giving Defendant the benefit of the doubt, the Court construes Defendant's counterclaim to assert fraud on the part of Flexco. To state a claim for common law fraud under New Jersey law, "a plaintiff must demonstrate: '(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'" *Hoffman v. Liquid Health Inc.*, No. 14-1838, 2014 WL 2999280, at *10 (D.N.J. July 2, 2014) (quoting *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 172-73 (2005)). Defendant alleges that Plaintiff committed fraud in leading it to believe that the '316 Patent applied to the product it sold. (Def.'s Answer &

Countercl. ¶ 65.) Defendant, however, fails to specifically identify what misrepresentation was made by Plaintiff, other than to refer generally to Plaintiff's "deceitful and fraudulent conduct." (*Id.* ¶ 66.) Defendant also fails to allege any facts in support of Flexco's knowledge or belief of its falsity, or that Flexco intended MegaPhase to rely on that falsity. Consequently, Defendant fails to properly plead a counterclaim for fraud, and the counterclaim is dismissed without prejudice.

### B.      Motion to Strike Affirmative Defenses

#### 1.      Legal Standard

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 217 (D.N.J. 1993) (internal quotation marks omitted). A court has "considerable discretion" in deciding a Rule 12(f) motion. *Id.* While it is recognized that motions to strike are useful in eliminating insufficient defenses and saving the time and expense of litigating inconsequential issues, the Third Circuit has instructed that a district court "should not grant a motion to strike a defense unless the insufficiency of the defense is clearly apparent." *United States v. Kramer*, 757 F. Supp. 397, 410 (D.N.J. 1991) (quoting *Cipollone v. Liggett Grp., Inc.*, 789 F.2d 181, 188 (3d Cir. 1986)). In evaluating the adequacy of a defense, courts in this district have explained that an affirmative defense is insufficient if "it is not recognized as a defense to the cause of action." *Tonka Corp.*, 836 F. Supp. at 217 (internal quotation marks omitted).

8

## 2.    Discussion

Flexco seeks to strike a majority of Defendant's sixteen affirmative defenses. Flexco's motion to strike contests the sufficiency of six of MegaPhase's defenses, namely its second, fourth, fifth, sixth, seventh, and ninth affirmative defenses, on the grounds that the defenses are "conclusory statements devoid of facts to support the defense's [sic] application to this particular case." (Pl.'s Moving Br. 13, ECF No. 8-1.) In addition, Plaintiff argues that Defendant's first, sixth,[5] eleventh, fifteenth, and sixteenth affirmative defenses should be stricken because they all are be barred as a matter of law. (*See id.* at 13.)

Plaintiff argues that Defendant's mere identification of certain affirmative defenses, without additional facts or elements, requires that those defenses be stricken. The Court disagrees. Rule 8(b) provides that "[i]n responding to a pleading, a party must . . . state in short and plain terms its defenses to each claim asserted against it." Fed. R. Civ. P. 8(b). To avoid a motion to strike affirmative defenses, "the defenses must have some possible relation to the controversy, must not result in clear confusion or prejudice, and must generally put the adversary on notice of the nature of the contentions." *Gelman v. Rosen*, No. 14-6790, 2015 WL 1849903, at *2 (D.N.J. Apr. 22, 2015). Further, courts have held that the pleading standard set forth in *Twombly* is not applicable to affirmative defenses under Rule 8(c).[6] *Newborn Bros. Co. v. Albion Eng'g Co.*, 299 F.R.D. 90, 97 (D.N.J. 2014). Here, Plaintiff has not alleged that Defendant's second, fourth, fifth, sixth, seventh, and ninth affirmative defenses lack any potential relation to the disputed issues in

---

[5] Plaintiff identifies Defendant's third affirmative defense as one that should be stricken as a matter of law, but provides argument in support of striking the sixth affirmative defense. Accordingly, the Court will address the legal sufficiency of the sixth affirmative defense and not the third.

[6] Federal Rule of Civil Procedure 8(c) requires that a party responding to a pleading must "affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c).

9

this litigation. Rather, Plaintiff's motion to strike relies exclusively upon the "conclusory" nature of Defendant's affirmative defenses. (Pl.'s Moving Br. 15.) Accordingly, Plaintiff's motion to strike is denied as to affirmative defenses two, four, five, six, seven, and nine.

Plaintiff argues that the remaining contested affirmative defenses—the first, third, eleventh, fifteenth, and sixteenth defenses—should be stricken as a matter of law. The Court agrees with regard to Defendant's sixth affirmative defense, laches, only. "An affirmative defense is insufficient as a matter of law if it cannot succeed under any circumstance." *In re Gabapentin Patent Litig.*, 648 F. Supp. 2d 641, 647-48 (D.N.J. 2009). Laches, as a defense is generally unavailable where there is an applicable statute of limitations. *Fox v. Millman*, 210 N.J. 401, 422 (2012); *Lavin v. Bd. of Educ. of City of Hackensack*, 90 N.J. 145, 151 (1982) (Laches is "an equitable defense that may be interposed in the absence of the statute of limitations."); *cf. Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1974 (2014) (holding that, "in the face of statute of limitations enacted by Congress, laches cannot be invoked to bar legal relief"). Here, Flexco's Complaint is based on breach of contract, which is subject to a six-year statute of limitations.[7] Because there is an applicable statute of limitations that supersedes the doctrine of laches, Plaintiff's motion to strike Defendant's sixth affirmative defense is granted. However, the Court does not consider Plaintiff's first, eleventh, fifteenth, and sixteenth affirmative defenses to be redundant, immaterial, impertinent, or scandalous matter, and therefore, Plaintiff's motion is denied with respect to those affirmative defenses.

For the reasons discussed above, Plaintiff's motion to strike the sixth affirmative defense is granted, and in all other respects, Plaintiff's motion to strike is denied.

---

[7] "[R]ecovery upon a contractual claim . . . shall be commenced within 6 years . . . after the cause of any such action shall have accrued." N.J.S.A. 2A:14-1.

## IV.    Conclusion

For the reasons set forth above, Plaintiff's motion to dismiss Defendant's counterclaim is granted, and Plaintiff's motion to strike is granted in part and denied in part.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

**Dated:** August 24, 2015

11